UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

JORGE ALVAREZ-ESTEVEZ,                    :
                                          :
                    Petitioner,           :
                                          :
                                          :
        -against-                         :
                                          :
UNITED STATES OF AMERICA.                 :
                                          :
                    Respondent.           :
------------------------------------X

┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____           │
│ DATE FILED: 02/03/2016 ____      │
└─────────────────────────────────┘

Nos. 15 Civ. 971 (JFK)
     13 Cr. 380 (JFK)

**OPINION & ORDER**

APPEARANCES
FOR PETITIONER JORGE ALVAREZ-ESTEVEZ
     Pro se

FOR RESPONDENT UNITED STATES OF AMERICA
     Preet Bharara, Esq.
     Russell Capone, Esq.

**JOHN F. KEENAN, United States District Judge:**

Petitioner Jorge Alvarez-Estevez (the "Petitioner" or "Alvarez-Estevez"), an inmate of the Moshannon Valley Correctional Center in Philipsburg, Pennsylvania, brings this pro se petition pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his prison sentence. The Petitioner asserts that he was denied effective assistance of counsel because his counsel advised him to accept a plea agreement that, allegedly unbeknownst to the Petitioner, included a supervisory role enhancement under U.S. Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines") § 3B1.1(c). For the reasons stated below, the petition is denied.

1

## I.  Background

### A.  The Petitioner's Arrest and Indictment

Between January 2012 and May 7, 2013, the Petitioner and three other individuals engaged in a conspiracy to distribute heroin. (See Indictment ¶¶ 1-2, United States v. Baez, No. 13 Cr. 380 (May 21, 2013), ECF No. 10.)  On May 7, 2013, agents arrested the Petitioner and his co-conspirators in the Petitioner's Forest Hills, Queens residence, where they recovered approximately 300 grams of heroin and assorted paraphernalia used to package the heroin for sale. (See Mot. to Reopen Mot. at 1-2, Baez, No. 13 Cr. 380 (Sept. 8, 2015), ECF No. 79; Sosinsky Aff. 4-5; Opp'n to Pet'r's 28 U.S.C. § 2255 Pet. ("Opp'n") 2.)

On May 21, 2013, the Petitioner and his co-conspirators were indicted under 21 U.S.C. § 841(b)(1)(A), which imposes a mandatory minimum sentence of 10 years' imprisonment for violations involving 1 kilogram or more of a mixture or substance containing a detectable amount of heroin. (See Indictment ¶ 3, Baez, No. 13 Cr. 380 (May 21, 2013), ECF No. 10; 21 U.S.C. § 841(b)(1)(A).)  From the time of the Petitioner's original presentment through his sentencing, Frederick L. Sosinsky ("Sosinsky") represented him. (Sosinsky Aff. 1.)

### B.  Plea Negotiations and Agreement

Initially, the Government expressed reluctance in offering the Petitioner any sort of plea bargain because of its belief it had strong evidence of the Petitioner's role as a supervisor in the conspiracy. (Id. at 6-7.)  Over time, however, the Government did agree to accept a plea to a violation of § 841(b)(1)(B), which imposes a mandatory minimum sentence of 5 years' imprisonment for violations involving 100 grams or more of a mixture or substance containing a detectable amount of heroin. (Id. at 7; 21 U.S.C. § 841(b)(1)(B).)

Sosinsky continued to press for a plea that would not require a mandatory minimum sentence and, after meeting with the Government again in November 2013, convinced the Government to agree to accept a plea to a violation of § 841(b)(1)(C), which does not impose a mandatory minimum sentence.  The Government conditioned its § 841(b)(1)(C) plea offer as follows:  (1) the Petitioner must agree to a recommended Guidelines range of 51-71 months based on his offense level, which included a two-point enhancement for the Petitioner's supervisory role; (2) the Petitioner's co-defendant, Vismar Baez, must accept the same plea; and (3) the two co-defendants must accept their pleas by December 6, 2013. (Id. at 8.)

Throughout the course of his negotiations with the Government, Sosinsky discussed the developments with the

Petitioner. (Sosinsky Aff. 8-9.)  The Petitioner is a lawful permanent resident originally from the Dominican Republic who speaks Spanish natively and has some difficulty understanding English. (Presentence Investigation Report ¶¶ 39-40, 46, Baez, 13 Cr. 380 (May 2, 2014).)  On October 8, 2013, the Petitioner emailed Sosinsky requesting that Sosinsky provide him with a translator because he believed that both he and Sosinsky experienced some difficulty communicating with one another. (Alvarez-Estevez Aff. Ex. 5.)  Sosinsky acknowledges that he communicated with his client "both with and without the services of a Spanish interpreter" because the Petitioner "speaks, reads and writes English fairly well and [Sosinsky] speak[s] and read[s] Spanish fairly well." (Sosinsky Aff. 18.)  Sosinsky and the Petitioner agree that an interpreter was utilized during meetings at the Courthouse and, at least, at one meeting with co-defendant Baez and his counsel where the § 841(b)(1)(C) plea agreement was discussed. (See Sosinsky Aff. 20-21; Alvarez-Estevez Aff. 10-11.)  Sosinsky also communicated with members of the Petitioner's family, who understand English and helped to translate for the Petitioner. (See Sosinsky Aff. 8, 10-11; Alvarez-Estevez Aff. 10, 12.)

On December 12, 2013, the Petitioner pleaded guilty to the indictment's lesser included offense under § 841(b)(1)(C).  In the written plea agreement, the Petitioner and the Government

agreed that his base offense level was 26 under U.S.S.G.

§ 2D1.1(c)(7). (Sosinsky Aff. Ex. A.)  The Petitioner and the

Government agreed that a two-point enhancement was warranted

under U.S.S.G. § 3B1.1(c) for the Petitioner's role as an

organizer, leader, manager, or supervisor in criminal activity

and that two reductions were warranted:  one for his acceptance

of responsibility (two points under U.S.S.G. § 3E1.1(a)) and one

for his timely notice of intention to enter a plea (one point

under § 3E1.1(b)). (Id.)  This resulted in an offense level of

25, which, combined with his criminal history category of I,

corresponds to a recommended Guidelines range of 57-71 months.

(See id.; U.S. SENTENCING GUIDELINES MANUAL tbl.)  The Petitioner also

agreed that he would not

> file a direct appeal; nor bring a collateral
> challenge, including but not limited to an
> application under Title 28, United States
> Code, Section 2255 and/or Section 2241; nor
> seek a sentence modification pursuant to Title
> 18, United States Code, Section 3582(c), of
> any sentence within or below the Stipulated
> Guidelines Range of 57 to 71 months'
> imprisonment . . . .

(Id.)

At his plea hearing, with the assistance of an official

Spanish-language interpreter, the Petitioner stated that, before

signing the agreement, his counsel explained it to him, he fully

understood the agreement, and he did not have any questions

about it. (Hr'g Tr. 8:10-16, Dec. 12, 2013.)  The Petitioner

also stated that he was satisfied with his counsel's representation thus far and that he had not been induced to offer a plea of guilty by reason of any promise or statement to the effect that he would get leniency or special treatment. (Id. at 8:17-20; 15:4-8.)  The Petitioner expressed his understanding that, at his agreed offense level and criminal history category, a sentence under the Guidelines would be between 57 and 71 months, but that the maximum punishment for his crime was 20 years' imprisonment. (Id. at 9:5-8; 11:13-18.)  He also expressed his understanding that he had agreed not to directly appeal or collaterally challenge his sentence if it was within or lower than the Guidelines' recommended sentence. (Id. at 13:5-13.)  This Court accepted his plea.

### C.  The Petitioner's Sentencing

On May 9, 2014, the Petitioner appeared for sentencing. Again, an official Spanish-language interpreter was present and translated for the Petitioner. (Hr'g Tr. 3:2-5, May 9, 2014). Sosinsky stated that he had read the presentence report, and he reviewed it with the Petitioner and had it translated for him. (Id. at 2:18-25.)  Sosinsky also requested a two-point reduction in the Petitioner's sentence based on the then-pending Amendment 782 to the Guidelines, which reduces the Guidelines applicable to drug trafficking offenses by two points. (Id. at 3:6-4:7.) The Government opposed the application of the amendment based

solely on the Petitioner's supervisory role in the conspiracy. (Id. at 4:21-24; 11:15-12:12.)  There was no objection to the fact that the Petitioner engaged in a supervisory role in the conspiracy.  The Petitioner was sentenced to 48 months, which is below the recommended range of 57-71 months.

On December 10, 2014, after Amendment 782 became effective, the Petitioner applied pro se for a sentence reduction.  This Court granted the motion and the Petitioner is currently sentenced to 46 months. (See Order Reducing Sentence, Baez, 13 Cr. 380 (Aug. 12, 2015), ECF No. 73.)  The Petitioner did not otherwise appeal this sentence.

### D.  The Petitioner's § 2255 Motion

On February 6, 2015, the Petitioner filed the instant motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  The Petitioner asserts that he was denied his constitutional right to effective assistance of counsel because his counsel advised him to accept a plea agreement that recommended a sentence of 57-71 months based in part on a supervisory role enhancement under U.S.S.G. § 3B1.1(c). (See Mem. in Support of Pet'r's 28 U.S.C. § 2255 Pet. ("Mem.") 2-4.) The Petitioner asserts that his counsel did not advise him that the plea agreement included this enhancement and that, when the Petitioner eventually learned of it from his co-defendants, he

confronted his counsel, who promised to have it removed. (See
Mem. 2-4; Alvarez-Estevez Aff. 8-11.)

In addition to his memorandum in support of his petition
and his reply memorandum, the Petitioner filed fourteen exhibits
and his own affidavit.  The Petitioner's exhibits include post-
plea correspondence with his attorney (except for one email
cited supra), post-sentencing correspondence with the warden of
the Manhattan Detention Center and First Department Departmental
Disciplinary Committee, and affidavits from each of his co-
defendants and his sister. (See Mem. Ex. A-G; Alvarez-Estevez
Aff. Ex. 1-4, 6-7.)

Each of the affidavits from the Petitioner's co-defendants
assert that he was not a leader in the conspiracy. (See Mem. Ex.
A; Alvarez-Estevez Aff. Ex. 4.)  Additionally, the Petitioner's
co-defendant Baez both contradicts and corroborates the
Petitioner's version of events.  Baez states that at a meeting
in November 2013, the Petitioner's "attorney told him that the
prosecutor is adding in the plea offer that Jorge Alvarez-
Estevez is an organizer, leader, manager, or supervisor of the
criminal activities charged in the indictment." (Mem. Ex. A.)
This contradicts the Petitioner's allegation that he learned
about the enhancement from his co-defendants.  Consistent with
the Petitioner's allegations, however, Baez does state that the
Petitioner's "attorney promised that he will make sure that the

8

role as an organizer, leader, manager, or supervisor is removed from the plea offer . . . ." (Id.)

Based on these allegations, the Petitioner claims that he received ineffective assistance of counsel and he asks for his sentence to be corrected, vacated, or set aside.

The Government filed its opposition to the Petitioner's motion three weeks late, on May 11, 2015.  On May 12, 2015, the Petitioner moved this Court to adopt his motion in light of the Government's late response.  Without ruling on the merits of the Petitioner's request, this Court ordered the Petitioner to file his reply because default cannot be obtained in a habeas proceeding brought against the United States "unless the claimant first establishes his claim or right to relief by evidence satisfactory to the court." (See Order, Alvarez-Estevez v. United States, No. 15 Civ. 971 (May 15, 2015), ECF No. 5 (quoting Bermudez v. Reid, 733 F.2d 18, 21-22 (2d Cir. 1984)).

On September 22, 2015, this Court ordered the Petitioner's counsel to provide sworn testimony addressing the allegations of ineffective assistance of counsel. (See Order, Id. (Sept. 22, 2015), ECF No. 8.)

Sosinsky's affidavit rebuts the assertions the Petitioner makes in his motion.  Sosinsky states that, after receiving the Government's offer of a plea under § 841(b)(1)(C), he reviewed the terms with the Petitioner and his family on multiple

occasions.  Sosinsky states that he first contacted the Petitioner's girlfriend—whom the Petitioner had encouraged Sosinsky to contact—and informed her of the plea conditions. (Sosinsky Aff. 8-9.)

He then enclosed the plea agreement in a letter to the Petitioner dated November 18, 2013, which explained to the Petitioner that the Government conditioned acceptance of his plea, in part, on accepting a recommended Guidelines range of 57-71 months. (Id. Ex. A.)

Thereafter, Sosinsky met with the Petitioner to review the terms of the plea agreement. (Sosinsky Aff. 10.)  At this meeting, the Petitioner expressed his anger that he would have to accept the same agreement as his co-defendant Baez. (Id.) Following this meeting, Sosinsky received an email from the Petitioner's sister excusing the Petitioner's anger and explaining that "[a]ll [the Petitioner] wants is to be sure that [the plea] is the best he can get[] . . . .  I trust you won't let my brother spend 57 month[s] in jail." (Sosinsky Aff. Ex. B.)  Sosinsky advised the Petitioner's sister that he should not be preoccupied by his co-defendant's sentence and, instead, "do what is best for him[self]." (Id.)  He also explained that the recommended range of 57-71 months was not mandatory and that he would ask for a sentence below 57 months. (Id.)

Sosinsky met with the Petitioner a second time to review the plea terms, this time accompanied by co-defendant Baez, his counsel, and a Spanish interpreter. (Sosinsky Aff. 11-12.)  Both attorneys expressed to their clients their opinion that the plea terms were the most favorable disposition available. (Id. at 12.)  The Petitioner again expressed his anger that he would have to accept the same plea as his co-defendant Baez. (Id. at 13.)

Sosinsky followed up with the Petitioner again.  Sosinsky states that the Petitioner remained focused on a legally irrelevant claim—that the confidential informant was Baez's customer. (Id.)  Sosinsky states that he advised the Petitioner that the Government's offer was a "take-it-or-leave-it" proposition, but the best opportunity to argue for a sentence of less than five years. (Id.)  After this meeting, Sosinsky states that the Petitioner agreed to accept the plea offer. (Id. at 13-14.)

Sosinsky and the Petitioner met once again on the date of his plea hearing.  Sosinsky states that, again accompanied by an interpreter, he reviewed the terms of the plea agreement, the plea colloquy, and the Petitioner's factual statement of guilt with the Petitioner. (Id. at 14.)

Sosinsky denies ever promising to the Petitioner that he would have the two-point enhancement removed.  He explains that

11

the Petitioner repeatedly objected to the Government's statement
that the Petitioner interacted directly with its confidential
witness. (Id. 9-10, 13.)  Sosinsky states that he advised the
Petitioner that, if the Petitioner pleaded guilty, he would
raise the objection with the Probation department and/or this
Court. (Id. at 13-14.)  Sosinsky raised this objection to the
presentence report with the Probation Department and noted it on
the record at the sentencing hearing. (See Presentence Report
15, Baez, 13 Cr. 380 (May 8, 2014) ("The defense attorney
submitted objections . . . that the defendant denied directly
giving drugs to the [confidential witness].  The face sheet has
been corrected.  A footnote has been added to paragraph 11b.");
Hr'g Tr. 17:23-18:20, May 9, 2014.)

Even though Sosinsky objected to this allegedly erroneous
fact, he states that the Petitioner was aware that it did not
eliminate the evidence of the Petitioner's supervisory role.
Sosinsky explains that he discussed the two-point enhancement
with the Petitioner expressly and that the Petitioner

> well knew from our discussions . . . that the
> managerial role adjustment in question was not
> based upon his dealings with [the confidential
> witness] alone, or upon his actions on the
> date of his arrest, but upon his alleged role
> more generally in 'running the tables' on
> other instances in which drugs were prepared
> for distribution to other customers.

(Id. at 10 n.6.)

12

## II.  Applicable Law

Mindful of the Petitioner's difficulty with English and his status as a <u>pro se</u> litigant, this Court construes his arguments liberally and interprets them to raise the strongest arguments that they suggest. <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).

Section 2255 permits a federal prisoner the right to challenge his sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a).  Because the Sixth Amendment provides criminal defendants with the right to effective assistance of counsel, ineffective assistance of counsel is a basis for relief under § 2255. <u>See</u> <u>Morales v. United States</u>, 635 F.3d 39, 42-43 (2d Cir. 2011).  To prove ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 687-89 (1984).  Where, as here, a petitioner has chosen to accept a plea agreement rather than proceed to trial, the <u>Strickland</u> test remains the applicable test. <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 58-59 (1985).

<u>Strickland</u>'s first prong requires the petitioner to show that his counsel's performance was deficient by demonstrating that it fell below an objective standard of reasonableness. <u>Strickland</u>, 466 U.S. at 687-88.  This objective standard of

13

reasonableness is measured under prevailing professional norms.
Id. at 688.

Strickland's second prong requires the petitioner to show
that his counsel's deficient performance prejudiced the defense.
Id. at 687.   This requires the petitioner to show that there is
a reasonable probability that, but for his counsel's
unprofessional errors, the result of the proceeding would have
been different.  Id. at 694.   The Strickland Court defined
"reasonable probability" as "a probability sufficient to
undermine confidence in the outcome."  Id.   In the case of a plea
agreement, "the defendant must show that there is a reasonable
probability that, but for counsel's errors, he would not have
pleaded guilty and would have insisted on going to trial." Hill,
474 U.S. at 59.

### III.  Discussion

As a preliminary matter, a prisoner may waive his right to
collaterally attack his sentence as part of his plea agreement,
if he does so knowingly and voluntarily. See United States v.
Monzon, 359 F.3d 110, 118-19 (2d Cir. 2004).

The Petitioner's written plea agreement and his response to
this Court's questioning during his plea hearing suggest that he
understood that he forfeited his right to directly appeal or
collaterally attack his sentence if it fell within or below the
range of 57-71 months.  However, because the Government did not

raise this procedural bar in its opposition, see Alnutt v. United States, 588 F. App'x 45, 45-46 (2d Cir. 2014) (recognizing that a defense of collateral-attack waiver can be forfeited), and because this Court construes the Petitioner's pro se arguments to raise the strongest arguments suggested— which, here, would be that "the very product of the alleged ineffectiveness cannot fairly be used to bar a claim of ineffective assistance of counsel," United States v. Hernandez, 242 F.3d 110, 114 (2d Cir. 2001) (internal quotation marks omitted)—the Court will consider the merits of the Petitioner's ineffective assistance of counsel claim despite the likelihood that he waived his right to bring this motion altogether.

### A.  The Petitioner Has Not Shown that His Counsel's Representation Fell Below an Objective Standard of Reasonableness

The Petitioner's ineffective assistance of counsel claim fails both Strickland prongs.  First, the Petitioner has produced no evidence to suggest that his counsel's representation fell below an objective standard of reasonableness.

The record demonstrates that, with the assistance of a Spanish interpreter, the Petitioner discussed the terms of his plea agreement on multiple occasions prior to accepting the plea.  While additional conversations may have occurred outside

of the presence of an interpreter,[1] the Petitioner testified
under oath and with the assistance of an interpreter that,
before signing the agreement, his counsel explained it to him,
he fully understood the agreement, he did not have any questions
about it, and he had not been induced to offer the plea by any
promises. (Hr'g Tr. 8:10-16; 15:4-8, Dec. 12, 2013.)  He also
stated that he was satisfied with his counsel's representation
and that he understood that the recommended sentence would be
between 57 and 71 months. (Id. 8:17-20; 11:13-18.)  The
Petitioner's solemn declarations in open court carry a strong
presumption of truth. See Blackledge v. Allison, 431 U.S. 63, 74
(1977); United States v. Hernandez, 242 F.3d 110, 112-13 (2d
Cir. 2001) (per curiam).  Moreover, the recommended sentence of
57-71 months that the Petitioner acknowledged at his plea
hearing is the same range that he admits his counsel presented
to him on two separate occasions when he claims he expressed

---

[1]  Under prevailing professional norms, the decision of when and
how to employ an interpreter is, by necessity, a matter of
counsel's and client's discretion based on the proficiency of
each party in a particular language. See, e.g., Ass'n of the Bar
of the City of N.Y., Formal Op. 1995-12 (1995).  Certainly, "the
practice of limiting communications with the client to periods
when the lawyer and client are in court and court interpreter is
available has a prejudicial effect on the client." Id.  The
record here shows, however, that this prejudicial practice was
not employed.  In addition to speaking to members of the
Petitioner's family (with the Petitioner's consent) who have
some degree of English proficiency, Sosinsky and the Petitioner
agree that a Spanish interpreter was utilized on other occasions
outside of court appearances.

anger at the inclusion of the supervisory role enhancement. (See Mem. 2-4; Alvarez-Estevez Aff. 8-11; Sosinsky Aff. Ex. B.) Therefore, the Petitioner's allegation that his counsel failed to advise him that the plea agreement included a supervisory role enhancement that resulted in a recommended sentence under the Guidelines of 57-71 months is not supported by the record. Accordingly, the Petitioner has not established that his counsel's conduct, which included multiple discussions of the plea agreement's terms with the assistance of a Spanish interpreter, fell below an objectively reasonably standard measured by prevailing professional norms.

### B. The Petitioner Was Not Prejudiced By the Alleged Deficiency in His Counsel's Representation

Failure to make a sufficient showing under either prong of the Strickland test is fatal to a claim of ineffective assistance of counsel. See Strickland, 466 U.S. at 697. Out of an abundance of caution, however, this Court will also address the Petitioner's failure to show that he suffered prejudice.

The supervisory role enhancement affected Petitioner's sentence in two ways.

First, it factored into the decision not to apply the then-pending Amendment 782 at the time of the Petitioner's original sentencing. Since Amendment 782 became effective, however, the

Petitioner's sentence has been reduced accordingly.  Therefore, this point is now moot.

Second, the supervisory role enhancement increased the Petitioner's offense level by two points, which increased the recommended Guidelines range for his sentence.  Even though the Guidelines are not mandatory and the Petitioner received a sentence below his recommended Guidelines' range, in essence, the Petitioner's argument is that his counsel's alleged promise to have the supervisory role enhancement removed led him to believe he would receive a reduced sentence.  See, e.g., Caminero v. United States, No. 99 Civ. 9093(TPG), 2008 WL 3833787, at *4 (S.D.N.Y. Aug. 15, 2008).

> Where the defendant's specific claim is that counsel has misled him as to the possible sentence which might result from a plea of guilty, the prejudice issue is whether the defendant was aware of actual sentencing possibilities, and if not, whether accurate information would have made any difference in his decision to enter a plea.

Chhabra v. United States, 720 F.3d 395, 408 (2d Cir. 2013) (internal quotation marks omitted).  In these instances, the Second Circuit has instructed district courts to consider the following nonexhaustive list of factors when determining whether a defendant would have decided not to plead guilty and insisted instead on going to trial:  (1) whether the defendant pleaded guilty in spite of knowing that the advice on which he claims to

have relied might be incorrect; (2) whether pleading guilty gained him a benefit in the form of more lenient sentencing; (3) whether the defendant advanced any basis for doubting the strength of the government's case against him; and (4) whether the government would have been free to prosecute the defendant on counts in addition to those on which he pleaded guilty. Id.; see United States v. Arteca, 411 F.3d 315, 320-22 (2d Cir. 2005).

As an initial matter, the Petitioner advised this Court that he was aware of the actual sentencing possibilities at his plea hearing when he stated that he understood that his sentence under § 841(b)(1)(C) could be up to 20 years. (Hr'g Tr. 9:5-8, Dec. 12, 2013.)  Even assuming the Petitioner did not have accurate information, three of the four Chhabra factors weigh heavily in favor of suggesting that the Petitioner would not have proceeded to trial.

Assuming that the alleged promise to remove the enhancement occurred, the first factor weighs in favor of the Petitioner going to trial because nothing in the record suggests that the defendant knew at the time he accepted the plea that this promise was incorrect.  The second, third, and fourth factors, however, strongly suggest that the Petitioner would not have proceeded to trial.

The second factor considers whether the Petitioner's guilty plea afforded him more lenient sentencing than available at trial.  The Petitioner's guilty plea earned him a total reduction of three criminal offense levels (two levels for acceptance of responsibility and one level for timely notifying of his intention to plead guilty), which would have been unavailable to him if he proceeded to trial. See Arteca, 411 F.3d at 321.

The third factor considers whether the Petitioner had doubts regarding the strength of the Government's case against him.  Nothing in the record suggests that the Petitioner had such doubts.  First, the Petitioner readily admits his involvement in the conspiracy. (See Mem. 9 ("Mr. Sosinsky was aware of defendant Jorge Alvarez-Estevez's co-defendants' confession that Vismar Baez was in fact the organizer, leader, manager and supervisor of the criminal activities of the charged conspiracy and that defendant Jorge Alvarez-Estevez worked for Vismar Baez in packaging the heroin." (emphasis added)). Second, the Petitioner readily admits that the drug mill was run out of his residence. (See Hr'g Tr. 3:15-19, Dec. 12, 2013; Opp'n 2.)[2]  Third, all of the Petitioner's co-defendants also chose to plead guilty. See Arteca, 411 F.3d at 321.

---

[2]  The U.S. Sentencing Commission's commentary to U.S.S.G § 3B1.1 states that "[a]n upward departure may be warranted . . . in the

The fourth factor considers whether if the Petitioner proceeded to trial, the Government would have been able to prosecute him under additional counts.  While the Petitioner's indictment listed only one count, that count charged the Petitioner under 21 U.S.C. § 841(b)(1)(A), which imposes a mandatory minimum sentence of 10 years' imprisonment.  This mandatory minimum sentence is more than double the sentence that the Petitioner received after agreeing to plead guilty to the lesser included offense under § 841(b)(1)(C).

Finally, while the Second Circuit has refrained from adopting a per se rule regarding the evidentiary weight accorded to a prisoner's mere allegation that he would have proceeded to trial, see Arteca, 411 F.3d at 322, the Petitioner himself equivocates on whether he would have done so:  "If Defendant had been put on notice of leadership enhancement, he may have gone to trial, or taken on other options . . . .  Moreover, Defendant had sufficient evidence to have withdrawn his guilty plea [and]

---

case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of the criminal organization." U.S. SENTENCING GUIDELINES MANUAL § 3B1.1 cmt. n.2.  Thus, even crediting the Petitioner's self-serving statements and his co-defendants' unsubstantiated claims that Baez alone led the conspiracy, the record as a whole supports the Government's case that the upward departure the Petitioner agreed to is warranted.

could have succeeded on trial or asked for a new plea." (Reply Mem. in Support of Pet'r's 28 U.S.C. § 2255 Pet. 7.)

Based on the above, the record as a whole indicates that, even if the Petitioner could show that his attorney's assistance fell below an objective standard of reasonableness, he cannot show that he was prejudiced by the assumed deficiency.

## C.   The Petitioner Is Not Entitled to a Default Judgment Despite the Government's Late Submission

On May 12, 2015, the Petitioner moved this court to adopt his petition based on the Government's late filing.  On May 15, 2015, without deciding the merits of the petition, the Court directed the petitioner to file his reply because "default cannot be obtained in habeas proceedings brought against the Unites States 'unless the claimant first establishes his claim or right to relief by evidence satisfactory to the court.'" (Order, Alvarez-Estevez, 15 Civ. 971 (May 15, 2015), ECF No. 5.) Since the petitioner has failed to establish a claim of ineffective assistance of counsel, he is not entitled to default against the United States.

## Conclusion

The Court has considered all of the Petitioner's arguments and has determined that they are without merit.  There is no need for the requested evidentiary hearing because "the motion and the files and records of the case conclusively show that the

22

prisoner is entitled to no relief." 28 U.S.C. § 2255(b).  For the reasons described above, the Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is denied.  The Clerk is respectfully directed to close the case and enter judgment for the respondent.

Petitioner has not made a substantial showing of the denial of a constitutional right and, therefore, a certificate of appealability shall not issue. See 28 U.S.C. § 2253(c).

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

Dated:     February 3, 2016
           New York, New York

John F. Keenan
United States District Judge